## HENRIETTA S. MANN *v.* WILLIAM MAU AND JEAN RACHAEL MAU.

### No. 2730.

ARGUED MAY 9, 1949.    DECIDED MAY 27, 1949.

KEMP, C. J., LE BARON AND CRISTY, JJ.

OPINION OF THE COURT BY KEMP, C. J.

Henrietta S. Mann, petitioner-appellant (hereinafter referred to as petitioner), is the owner of a parcel of land

at the corner of Judd and Liliha Streets in Honolulu, and William Mau and Jean Rachael Mau, respondents-appellees (hereinafter referred to as respondents), are the owners of a parcel of land containing an area of 16,464 square feet, being lot C-1 as shown on map 10 filed with land court application 471. This parcel abuts on Judd Street and adjoins that of petitioner. Both parcels are located in a class "A" residential district.

On May 21, 1948, the city planning commission, the agency of the municipal government charged with the duty of administering the zoning ordinance, received for approval the application of the respondents for the subdivision of lot C-1 into lots C-1-A, area 5,418 square feet; lot C-1-B, area 4,193 square feet; lot C-1-C, area 5,008 square feet and lot C-1-D, area 1,845 square feet. In a letter accompanying the application the respondents stated: "we have indicated on the map that Lots C-1-B and C-1-C will each own a one-half undivided interest in lot C-1-D, the roadway." Respondents' parcel C-1 has a frontage on Judd Street of approximately 102 feet. By this subdivision lot C-1-A was given a frontage on Judd Street of approximately 86 feet and lot C-1-D was given a frontage on Judd Street of approximately 16 feet. Said lot C-1-D extended back from Judd Street between petitioner's parcel and respondents' lots C-1-A and C-1-B, a distance of approximately 115 feet to the boundary of respondents' lot C-1-C. On May 27, 1948, the city planning commission approved the subdivision and the map was filed with land court application 471 as map 21.

On July 8, 1948, the city planning commission approved what amounted to an amendment and resubdivision of respondents' lot of 16,464 square feet, which divided it into three lots instead of four. The boundaries of lots C-1-A and C-1-C remained unchanged and the 1,845 square feet, designated as lot C-1-D in the original subdivision,

was added to the 4,193 square feet of the original lot C-1-B and designated lot C-1-B, area 6,038 square feet, with the area of former C-1-D subject to an easement for roadway and utilities. The approved resubdivision map was filed with land court application 471 as map 22.

Subsequent to the approval of the first application for subdivision on May 27, 1948, and prior to the approval of the resubdivision of July 8, 1948, the respondents commenced the construction of a dwelling house on lot C-1-B of the subdivision of May 27, 1948. Lot C-1-B, as then laid out and registered in the land court, contained an area of only 4,193 square feet.

The zoning ordinance of the City and County of Honolulu as amended provides in part as follows: "Within any Class 'A' residential district no dwelling referred to in Section 102 shall be constructed on any lot having an area of less than five thousand square feet. There may be one or more such single family dwellings on any lot having an area of ten thousand square feet or more provided there is not less than five thousand square feet of lot area for each dwelling; provided, however, that this area requirement shall not apply to the building of a single family dwelling on lots of less than five thousand square feet in area where the existing boundaries of such lots were actually established on or prior to February 6, 1940." (City & Co. of Honolulu Ord. No. 1051, § 107.)

Petitioner protested the construction of the dwelling on lot C-1-B claiming that, by reason of its area being less than 5,000 square feet, it violated the zoning ordinance and would injuriously affect the value of her adjoining property. Instead of heeding petitioner's protest the respondents on July 8, 1948, resubdivided their lot C-1 as hereinabove stated so that lot C-1-B, the lot on which the building was being constructed, contains an area of 6,038 square feet, with 1,845 square feet thereof (the area

formerly comprising lot C-1-D) subject to an easement in favor of lot C-1-C for road and utility purposes.

Petitioner sought an injunction prohibiting the construction by the respondents of a dwelling upon lot C-1-B alleging that said construction is in direct violation of ordinance 1051 of the City and County of Honolulu; that said subdivision of July 8, 1948, was a "sham and subterfuge designed to circumvent the provisions of said Ordinance No. 1051 relating to zoning; that said Lot C-1-B in truth and in fact contains only 4,193 square feet, being encumbered by said Easement 'E' on that portion of Lot C-1-B which, on the subdivision of June 15, [sic] 1948 was designated as Lot C-1-D; that subsequent to July 9, 1948, Respondents have continued to construct the dwelling house on Lot C-1-B and are now proceeding with its construction, notwithstanding the fact that Petitioner has requested that said construction cease and desist as being in violation of said Ordinance No. 1051 relating to zoning."

The petitioner also alleged that the value of petitioner's parcel of land will be greatly impaired by the construction of said dwelling on said lot C-1-B and that "the construction of said dwelling house on said Lot C-1-B in fact destroys the district on which Petitioner's said parcel of land is located as a Class 'A' residential district."

The court in its decision denying petitioner's prayer for an injunction said in part: "With respect to the allegation contained in Paragraph IX relating to impairment of the value of the Petitioner's property by reason of the construction of the dwelling house by the Respondents on Lot C-1-B, the Court finds that there is such impairment of value. However, the evidence before the Court shows that the construction of a dwelling house on said Lot C-1-B is not in violation of Ordinance No. 1051. If the common boundary of Lot C-1-A and Lot C-1-B is ex-

tended across Easement 'E', Lot C-1-B has an area in excess of 5000 square feet without taking into consideration the area which lies wholly betweeen Lot C-1-A and the Petitioner's property. The City Planning Commission of the City and County of Honolulu has consistently held that an easement for a roadway may be included within the minimum area required by the zoning ordinance. Ordinance No. 1051 is a restrictive ordinance and should be strictly construed. If the easement area should be excluded from the minimum area required by the ordinance, it should be so stated in the ordinance."

Petitioner's bill was dismissed, hence this appeal.

The petitioner asserts, and we agree, that the sole question for our determination is the meaning of the word "lot" as used in said ordinance 1051 and particularly in section 107 thereof.

The petitioner contends that any portion of a lot which is subject to an easement for a roadway should be excluded in determining the question of whether or not the "lot" meets the requirement of the ordinance. In other words, the argument is that "lot" means that area subject to the exclusive use of the owner for his dwelling and surrounding yard, therefore, unencumbered by an easement in favor of others for road purposes.

It is clear that, in order to uphold petitioner's contention that any portion of a lot which is subject to an easement for a roadway should be excluded in determining the question of whether the lot meets the requirements of the ordinance, we would necessarily read into the ordinance words not used by the authors of the ordinance. It is likewise clear that ordinance 1051 restricts the use of private property.

Statutes which restrict the use of private property are strictly construed. (50 Am. Jur., Stat. § 400.) The same rule applies to municipal ordinances. (*State* v. *Dauben,*

124 N. E. 232 [Ohio]; *Town of Union* v. *Ziller,* 118 So. 293 [Miss.].

The rule of strict construction requires that the word "lot" as used in ordinance 1051 be given its ordinary meaning. Webster defines lot as "one of the smaller portions of land (as a division of a block) into which cities, towns, or villages are laid out, the size varying with the locality." There is no intimation in any provision of the ordinance that the municipal authorities having to do with the enactment of the ordinance intended that the word should be given any meaning other than its ordinary meaning.

The city planning commission is not only the agency of the municipal government which is entrusted with the duty of enforcing the provisions of the zoning ordinance but before any zoning ordinance becomes effective the approval of the planning commission is required. (R. L. H. 1945, § 6644.)

We are supported in our interpretation of the ordinance by the practice of the city planning commission of approving subdivisions in which areas subject to an easement for a roadway were included to make up the minimum requirement of the ordinance. Some twenty-two such cases were evidenced and no adverse ruling by the commission produced.

In *United States* v. *Hermanos y Compania,* 209 U. S. 337, the court, after observing that the contention of the government is, in the opinion of the court, right and needs no comment to make it clear, made the further observation that the Treasury decisions were in accordance with the interpretation for which the government now stands and held that when the meaning of a statute is doubtful great weight should be given to the construction placed upon it by the department charged with its execution. Two of the justices concurred in the opinion of the court

solely because of the prior administrative construction.

The conclusion reached herein is also supported by the following authority: *Shorehaven in Manhasset* v. *Village of Great Neck Estates,* 22 N. Y. S. (2d) 944, interprets an ordinance of the Village of Great Neck Estates similar to ordinance 1051 in that it provided that, "Within Residence 'B' District, no principal building or establishment and the accessory buildings customarily incident to it shall be erected upon or shall occupy a piece of ground of an area of less than 12,900 square feet."

The petitioner, who owned an area of 11,738 square feet fronting on the easterly side of Tulip Drive purchased an additional area 15 feet in width and 123.15 feet in length running from the rear of his original holding to the westerly side of Clover Drive. He thereafter applied for a permit to construct a building on said premises. His application was denied by the village trustees on the ground that the strip 15 by 123.15 feet could not properly be included in computing the minimum building area.

On petitioner's mandamus proceeding against the village trustees the court said: "The respondents have proceeded under the mistaken belief that they were endowed with power to eliminate and disregard a portion of the petitioner's land in ascertaining whether there was compliance with the minimum area requirements. The only requirement is that the building be erected upon a piece of ground of an area of not less than 12,900 square feet. There is no requirement that the building be of a specified size or that it shall occupy a specified portion of the plot or that the plot shall be of any specified shape. All of this is left entirely to the discretion of the owner. That the owner had purchased a narrow strip of land adjoining that which it previously owned solely for the purpose of complying with the minimum area requirements cannot serve to enlarge the power of the respondents, which must

be derived from the ordinance alone. The petitioner's motive in assembling the plottage is of no importance. Important only is the fact that it has complied with the minimum area requirements. Upon such compliance the respondents' duty to issue the requested permit was purely ministerial. There seems no escape from the conclusion that the respondents, in taking exception to the shape of the plot based upon the belief that it was assembled in contravention of what they term the spirit of the ordinance, have assumed legislative powers never delegated to them. Judicial sanction of this practice would result in a completely intolerable situation, wherein land owners in the Village of Great Neck Estates and prospective purchasers of land would be left completely at the mercy and subject to the whim and caprice of the respondents."

The decree dismissing petitioner's bill is affirmed.

*D. C. Lewis* (*Lewis, Kimball & Buck*) for appellant.

*M. Marumoto* (*Murakami* and *Marumoto*) for appellees.